UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

JOSE TINEO,                                         Civil File No. 05-724 (ADM/SRN)

        Plaintiff,

       v.                                          <u>REPORT AND RECOMMENDATION</u>

FEDERAL BUREAU OF PRISONS, and
MAYO HOSPITAL OF ROCHESTER, MN,

        Defendants.

_____

      Plaintiff, an inmate at the Federal Medical Center in Rochester, Minnesota, ("FMC-Rochester"), has filed a complaint seeking compensation for personal injuries that he allegedly has suffered during his imprisonment. (Docket No. 1.)  The matter is presently before this Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1]  For the reasons discussed below, the Court finds that Plaintiff's complaint cannot survive the initial screening requirements of § 1915A.  It will therefore be recommended that this action be summarily dismissed.

## I. BACKGROUND

      Plaintiff's complaint sets forth a rambling collection of grievances about the medical care that he has received at FMC-Rochester during the past five years.  He alleges that he

_____

     [1]  Plaintiff did not pay the $250 filing fee required for this action, (<u>see</u> 28 U.S.C. § 1914(a)), but instead filed an application for leave to proceed <u>in forma pauperis</u>, ("IFP"). (Docket No. 2.)  By order dated April 12, 2005, (Docket No. 3), Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until after he paid an initial partial filing fee of $20.73, as required by 28 U.S.C. § 1915(b)(1). Plaintiff has now paid his initial partial filing fee, so this case is now ripe for § 1915A screening.

has been complaining about pain in his throat, and "sinus problems," for several years. The "medical staff" at FMC-Rochester allegedly determined that Plaintiff's maladies were caused by a tooth cavity, and recommended that one of his teeth be extracted. The tooth extraction was performed, but that failed to solve Plaintiff's medical problems.

Plaintiff further alleges that he "had a botched operation," during which he received "too high of a dose" of anesthetics, and nearly died. According to the complaint, Plaintiff "had to have a defibulator [sic]" to be revived. The complaint also includes several vague references to an "injury" that was "diagnosed wrong," an inability to "make saliva," and "emotional scarring."

The complaint does not identify any of the individuals who have been involved in Plaintiff's medical treatment at FMC-Rochester, nor is Plaintiff attempting to sue any of those individuals. Instead, Plaintiff is attempting to sue (1) the Federal Bureau of Prisons, ("BOP"), and (2) "Mayo Hospital of Rochester, MN," ("Mayo"). He is seeking "compensation" from those Defendants in the amount of $3,000,000.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from a governmental agency, (namely the BOP), his complaint must undergo preliminary screening pursuant to 28 U.S.C. § 1915A, which is part of the Prison Litigation Reform Act of 1995, ("PLRA"). Subsection 1915A(a) requires federal courts to review the pleadings in every prisoner civil rights action against governmental entities and employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that the pleading,

on its face, fails to state a cognizable claim it must be summarily dismissed.  28 U.S.C. § 1915A(b)(1).

In this case, it is not entirely clear whether Plaintiff is attempting to bring a common law negligence claim for medical malpractice, or whether he is claiming that Defendants violated his federal constitutional rights and are therefore liable under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  For Plaintiff's benefit, the Court has considered both of those possibilities.

A.  Medical Malpractice

Plaintiff's complaint includes several references to "negligence," as well as an attached copy of an "Administrative Claim For Damages" that refers to the Federal Tort Claims Act, ("FTCA").  Those aspects of the complaint suggest that Plaintiff is attempting to bring a common law medical malpractice claim under the FTCA.

The FTCA, (28 U.S.C. §§ 2671 et seq.), provides an express waiver of the federal government's immunity for claims based on certain torts, including medical malpractice, committed by federal agents.  United States v. Orleans, 425 U.S. 807, 813 (1976).  FTCA claims are subject to, and governed by, the substantive law of the state in which the claims arose.  28 U.S.C. § 1346(b).  Because Plaintiff's medical malpractice claims arose in Minnesota, they are governed by Minnesota state law.

Minn.Stat. § 145.682 is a Minnesota law that applies to all medical malpractice actions brought in Minnesota, including malpractice claims brought under the FTCA.  Oslund v. United States of America, 701 F.Supp. 710 (D.Minn. 1988); Bellecourt v. United States, 784 F.Supp. 623, 636 (D.Minn. 1992), aff'd 994 F.2d 427 (8th Cir. 1993), cert. denied, 510 U.S. 1109

3

(1994); Anderson v. United States of America, No. Civ. 5-96-235 JRT/RLE, 1998 WL 92460

(D. Minn. 1998).  Section 145.682 requires every plaintiff in a Minnesota medical malpractice

case to furnish two affidavits in support of his her or her claims.  These two affidavits have

been described as follows:

> "The first affidavit ('expert review affidavit') <u>must be submitted with the</u>
> <u>complaint</u> and state that before commencing the lawsuit, plaintiff's attorney
> reviewed the facts of the case with a medical expert who believed that at least
> one defendant named in the suit deviated from the applicable standard of care
> and thereby injured the plaintiff.... [2]
>
> The second affidavit ('expert disclosure affidavit') must be served upon the
> defendant within 180 days after commencement of the suit and identify each
> expert plaintiff intends to call at trial, disclose the substance of the facts and
> opinions to which the expert will testify, and provide a summary of the grounds
> for each opinion."

Bellecourt, 784 F.Supp. at 636, citing Minn.Stat. § 145.682, subd. 2, subd. 3, and subd. 4,

(emphasis added).  If a medical malpractice complainant fails to meet either one of the two

affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal."

Minn.Stat. § 145.682, subd. 6; Stroud v. Hennepin County Medical Center, 556 N.W.2d 552

(Minn. 1996); Lindberg v. Health Partners, Inc., 599 N.W.2d 572 (Minn. 1999).[3]

In this case, Plaintiff has not complied with Minn.Stat. § 145.682, because his

complaint is not accompanied by the expert review affidavit that is required by § 145.682,

---

[2]  If the plaintiff is not represented by counsel, he must file his own affidavit of expert
review in lieu of an attorney's affidavit.  Minn.Stat. § 145.682, subd. 5.

[3]  A plaintiff can be excused from the statutory affidavit requirements if the defendant's
liability can be established without any expert testimony.  Minn.Stat. § 145.682, subd. 2;
Bellecourt, 784 F.Supp. at 637.  If, for example, a surgeon clearly amputated the wrong limb,
expert testimony presumably would not be required to establish negligence.  In the present
case, however, Plaintiff has not alleged, and the Court finds no reason to believe, that he can
prove his medical malpractice case without presenting expert witness testimony.

subd. 2(1) and subd. 3(a).  Without that affidavit, Plaintiff's complaint fails to state an actionable FTCA malpractice claim.

B.  Bivens claim

Plaintiff's complaint also includes vague references to "deliberate indifference," which suggests that he may be attempting to bring a Bivens claim based on an alleged violation of his Eighth Amendment rights.  See Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) ("[i]t has long been established that prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when the officials are deliberately indifferent to the prisoner's serious medical needs"), citing Estelle v. Gamble, 429 U.S. 97, 104 (1976).  However, Plaintiff has not stated an actionable Bivens/Eighth Amendment claim against either of the two named Defendants.

Plaintiff cannot bring a Bivens/Eighth Amendment claim against the BOP, because the BOP is a federal agency, and it is therefore immune from such claims.  Schutterle v. United States, 74 F.3d 846, 848 (8th Cir.) (the United States and its agencies "are not proper Bivens defendants because of sovereign immunity"), cert. denied, 517 U.S. 1210 (1996).  See also Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982) ("Bivens and its progeny do not waive sovereign immunity for actions against the United States; it implies a cause of action only against federal officials," not federal agencies), cert. denied, 459 U.S. 1210 (1983).  Simply put, Plaintiff cannot sue the BOP itself under Bivens for allegedly violating his Eighth Amendment rights.

Plaintiff cannot maintain a Bivens/Eighth Amendment claim against Mayo, because he

has not alleged any facts showing that Mayo itself, as a corporate entity, acted with deliberate indifference toward his medical needs.  Although Plaintiff has not mentioned any specific Mayo employees by name in his complaint, it clearly appears that he is attempting to sue Mayo based on some allegedly wrongful acts or omissions by one or more of its agents or employees.  In other words, Plaintiff is claiming that Mayo should be held vicariously liable under the doctrine respondeat superior.  It is well-settled, however, that parties cannot be sued in a federal civil rights action based on the doctrine of respondeat superior.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

To state an actionable civil rights claim against a corporate entity, a complaint must allege facts showing that the corporate entity's agents or employees violated the plaintiff's constitutional rights as a result of some particular policy or custom of the corporate employer, or as a result of the employer's failure to provide adequate training or supervision.  City of Canton v. Harris, 489 U.S. 378, 385-87 (1989).  This rule is applicable not only where the named defendant is a governmental entity, (as in City of Canton), but also where the defendant is a private corporation, (such as Defendant Mayo), that may be deemed to be acting under color of state law.  Lux By Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982).  Because Plaintiff has alleged no facts suggesting that his federal constitutional rights were violated as a result of some alleged policy, custom or training deficiency by Mayo itself, he has failed to state an actionable civil rights claim against Defendant Mayo.

## III. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff's complaint does not state any cause of action on which relief can be granted. Plaintiff has failed to plead an actionable FTCA claim for medical malpractice, because he has not met the requirements of Minn.Stat. § 145.682; and he has not stated an actionable Bivens/Eighth Amendment claim because (a) the BOP is immune from such claims, and (b) there are no factual allegations supporting any such claim against Mayo. The Court will therefore recommend that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b).

The Court will also recommend that Plaintiff's application for leave to proceed in forma pauperis, (see n. 1, supra), be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff will remain liable for the unpaid balance of the $250 filing fee.[4] To date, he has paid only $20.23, so he still owes $229.77. Prison officials will have to deduct that amount from Plaintiff's institutional trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Finally, it will be recommended that the dismissal of this action count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

---

[4] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

## IV.  RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.  Plaintiff's "Application to Proceed Without Prepayment of Fees," (Docket No. 2),

be **DENIED**;

2.  This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b);

3.   Plaintiff be required to pay the unpaid balance of the Court filing fee, namely

$229.77, in accordance with 28 U.S.C. § 1915(b)(2); and

4.  For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that

it is frivolous, malicious, or fails to state a claim on which relief may be granted."

Dated: June 22, 2005

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 7, 2005** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.